NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3067
_____

PREVIN MANKODI,

Appellant

v.

TRUMP MARINA ASSOCIATES, LLC, a New Jersey LLC;
SUSAN FLOORPERSON; J. DEALER, Trump Marina
Associates employees whose real names are not known
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 11-cv-04478)
District Judge:  Honorable Joseph H. Rodriguez
_____

Argued April 16, 2013
Before:  AMBRO, HARDIMAN and COWEN, *Circuit Judges*.

(Filed: May 06, 2013)

Robert A. Nersesian **[Argued]**
Nersesian & Sankiewicz
528 South 8th Street
Las Vegas, NV 89101

Thomas B. Duffy
739 Bayview Drive
Absecon, NJ 08201
        *Attorneys for Plaintiff-Appellant*

1

John M. Donnelly **[Argued]**
Mary Beth Clark
Brian J. Cullen
Levine, Staller, Sklar, Chan, Brodsky & Donnelly
3030 Atlantic Avenue
Atlantic City, NJ 08401
       *Attorneys for Defendant-Appellee*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Previn Mankodi appeals the District Court's order dismissing his claims against Trump Marina Associates, LLC, for lack of subject matter jurisdiction. We will affirm in part, reverse in part, and remand.

I

Because we write for the parties, who are well acquainted with the case, we recite only the facts and procedural history essential to our decision. Our review of the District Court's order granting a motion to dismiss requires us to recount the facts as pleaded in Mankodi's complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).

In the early morning of August 3, 2009, Mankodi placed a bet of $3,700 on a hand of blackjack in the Trump Marina Casino. The dealer dealt Mankodi an ace, giving him statistically expected winnings of $1,865 from that hand. A Casino floorperson instructed the dealer to rescind the hand, however. Mankodi protested to the floorperson,

who called for security to escort Mankodi from the Casino. Security allowed Mankodi to protest to a state gaming official on-site, but then demanded that he leave the Casino. Significantly, however, the security officers never told Mankodi that he could not return to the Casino later. The gaming official told Mankodi that his complaint could not be resolved on the spot, and that Mankodi would have to make a complaint in writing to the Casino Control Commission (CCC). Mankodi then left the Casino.

That evening, Mankodi returned to the Casino and asked to speak to the manager then on duty. Casino security officers tackled Mankodi, placed him in handcuffs, and forced him into a private room, where they searched his person and property. Mankodi was held in the private room for over an hour before he was ejected from the Casino and told not to return. The CCC later confirmed that the Casino acted illegally when it withdrew Mankodi's blackjack hand.

Mankodi sued the Casino and its relevant employees, raising thirteen causes of action, and pleading damages ―in excess of $75,000.‖ App. 24. The Casino filed a motion to dismiss Mankodi's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The District Court granted the motion, finding that Mankodi ―could not possibly meet the jurisdictional threshold for federal court.‖ *Id.* Mankodi appealed.

---

[1] Although the District Court dismissed Mankodi's complaint for lack of subject matter jurisdiction, its order granted the Casino's Rule 12(b)(6) motion to dismiss for failure to state a claim, rather than its motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Consistent with that order and the briefs of the

## II

Mankodi invoked the District Court's subject matter jurisdiction under 28 U.S.C. § 1332. We have jurisdiction over the appeal under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's grant of a motion to dismiss. *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010); *see also Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (plenary review over a grant of a motion to dismiss for lack of subject matter jurisdiction). ―To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although we must accept the factual allegations in the complaint as true, we are not bound to accept ―legal conclusions" or ―mere conclusory statements." *Id.* at 678.

## III

We begin by determining whether the District Court had subject matter jurisdiction over Mankodi's case, and then analyze each of his counts to determine whether they state a claim for relief. For the reasons that follow, we hold that the District Court had jurisdiction, and that Mankodi stated claims for battery, false imprisonment, and breach of the duty of public accommodation (Counts 1, 2, and 6 of his complaint).

---

parties—which focus on the merits of Mankodi's claims—we shall evaluate whether Mankodi's claims are adequately pleaded.

A

Federal courts have diversity jurisdiction only "where the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). Where, as here, the plaintiff has pleaded damages exceeding $75,000, federal jurisdiction is appropriate unless "it appears to a legal certainty that the plaintiff cannot recover more than the jurisdictional amount of $75,000." *Frederico v. Home Depot*, 507 F.3d 188, 195 (3d Cir. 2007) (citation and emphasis omitted). In personal injury cases such as this one, "[t]he general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961).

Here, Mankodi has pleaded damages in excess of $75,000 for battery and false imprisonment. As we shall explain, both of these causes of action were adequately pleaded. There is no indication that Mankodi asserted these claims in bad faith, and a review of jury verdicts in other battery and false imprisonment cases shows that Mankodi might recover more than $75,000, even though he has alleged only limited physical injury. *See, e.g.*, *Romanski v. Detroit Entm't, LLC*, 428 F.3d 629, 631–33 (6th Cir. 2005) (plaintiff awarded $600,000 in punitive damages for false imprisonment after being detained and ejected from a casino, despite no allegation of physical injury); *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1033 (3d Cir. 1988) (jury awarded $150,000 in compensatory damages and $1,000,000 in punitive damages for abuse of

5

process and false imprisonment to plaintiff detained by casino); *Grosch v. Tunica Cnty.*, 2009 WL 161856, at \*2 (N.D. Miss. Jan. 22, 2009) (plaintiff recovered over $600,000 for 42 U.S.C. § 1983 and state law claims after being detained and searched by casino); *Mason v. Sportsman's Pub*, 702 A.2d at 1311 (N.J. Super. Ct. App. Div. 1997) (plaintiff awarded $264,750 for battery after being thrown out of a bar by a bouncer even though claims of permanent disability were refuted).

The Casino argues that jury verdicts may not be used as precedent and notes that most of the aforementioned cases were brought under § 1983, which allows for punitive damages. These arguments are unpersuasive. First, although it is true that jury verdicts do not provide controlling legal authority, they remain ample persuasive evidence that the District Court erred when it held to a legal certainty that Mankodi could not recover more than $75,000. *See Frederico*, 507 F.3d at 195. Indeed, courts have examined jury verdicts to determine whether cases meet the jurisdictional threshold. *See, e.g.*, *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d. 1063, 1069 (D. Ariz. 2004). They have even examined the damages pleaded by similar plaintiffs in resolving jurisdictional threshold disputes. *See, e.g.*, *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993).

As for the Casino's second argument, under New Jersey law, punitive damages are available for both battery, *see Murphy v. Implicito*, 920 A.2d 678, 688 (N.J. Super. Ct. App. Div. 2007), and false imprisonment, *see Liptak v. Rite Aid, Inc.*, 673 A.2d 309, 318 (N.J. Super. Ct. App. Div. 1996). Thus, even though Mankodi's physical injuries may be

6

slight, depending on the proof at trial, a jury might award him punitive damages and we cannot say that such an award could, under no circumstances, exceed $75,000.[2] Therefore, federal jurisdiction lies.

## B

Having found that the District Court had jurisdiction, we now consider which of Mankodi's claims were adequately pleaded. A claim must —contai sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). For reasons we shall explain, we hold that Mankodi has adequately pleaded claims for battery, false imprisonment, and breach of the duty of public accommodation (Counts 1, 2, and 6 of his complaint). Because Mankodi's remaining claims have not been adequately pleaded, we will affirm their dismissal.

### 1

Mankodi's first two viable claims against the Casino are for battery and false imprisonment. Under New Jersey law, —[]ny non-consensual touching is a battery." *Perna v. Pirozzi*, 457 A.2d 431, 439 (N.J. 1983). The complaint alleges that Casino employees placed hands upon Mankodi, and tackled and handcuffed him. That is clearly a —nonconsensual touching."

---

[2] Because we find that Mankodi could recover in excess of $75,000 on his battery and false imprisonment claims, we do not address the amount of damages that might be available for his breach of public accommodation claim.

7

Similarly, "[f]alse imprisonment is the constraint of the person without legal justification." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009) (internal quotation marks and citation omitted). Here, Mankodi was constrained inside a private Casino room for over an hour after he asked to speak to a Casino manager.

The Casino argues that its actions do not constitute battery or false imprisonment because a New Jersey statute provides that:

> Nothing in this section or in any other law of this State shall limit the right of a casino licensee to exercise its common law right to exclude or eject permanently from its casino hotel any person who disrupts the operations of its premises, threatens the security of its premises or its occupants, or is disorderly or intoxicated.

N.J. Stat. Ann. § 5:12-71.1. However, Mankodi's complaint does not indicate that he was disruptive, threatening to security, disorderly, or intoxicated. Therefore, his claims for battery and false imprisonment survive a motion to dismiss despite § 5:12-71.1.[3]

Mankodi has also pleaded a viable claim for breach of the duty of public accommodation. Under New Jersey law, "when property owners open their premises to the general public in pursuit of their own property interests, they have no right to exclude people unreasonably." *Uston v. Resorts Int'l Hotel, Inc.*, 445 A.2d 370, 375 (N.J. 1982). However, property owners may exclude people "whose actions disrupt the regular and essential operations of the premises, or threaten the security of the premises and its

---

[3] We express no view as to whether and to what extent § 5:12-71.1 would give the Casino a defense to battery or false imprisonment if Mankodi is later found to have been disruptive, threatening, disorderly, or intoxicated.

8

occupants," for instance, ―the disorderly, the intoxicated, and the repetitive petty offender." *Id.* (internal quotation marks, alterations, and citations omitted). A plaintiff may recover damages for a breach of the duty of public accommodation. *See id.* at 374 (citing *Ferguson v. Gies*, 46 N.W. 718, 720 (Mich. 1890)). ―Whether a decision to exclude is reasonable must be determined from the facts of each case." *Id.* at 375.

Mankodi argues that the Casino breached the duty of public accommodation both when it first ejected him and when it detained and ejected him the second time. Mankodi's allegations do not indicate that his initial peaceable protest and his later request to speak to a manager disrupted the Casino or threatened its security. Given the New Jersey Supreme Court's admonition that public accommodation claims must be determined on a case-by-case basis, we cannot conclude at this stage in the litigation that the Casino's decision to exclude Mankodi was reasonable. *See id.* (finding that casino acted unreasonably by excluding card counter who did not threaten the security of any casino occupant or disrupt the functioning of any casino operations). Therefore, Mankodi's public accommodation claim may proceed.

2

We agree with the Casino that Mankodi's remaining claims are not viable, and we shall explain why only briefly.[4]

---

[4] Mankodi's brief does not take issue with the District Court's dismissal of Counts 3, 9, 10, and 13. Accordingly, we will affirm the dismissal of those counts. *See Reform*

First, Mankodi's premises liability claim (Count 4) fails because premises liability attaches only when a plaintiff is injured by the ―physical conditions of the property‖ or ―the combination of a defect in the property itself and the acts of third parties.‖ *Roe v. N.J. Transit Rail Operations, Inc.*, 721 A.2d 302, 306 (N.J. Super. Ct. App. Div. 1998). Mankodi has not alleged any physical defect in the Casino's property.

Next, Count 5 fails because it attempts to assert a claim based on a violation of the CCA, which does not provide a private right of action. *See Campione v. Adamar of N.J, Inc.*, 714 A.2d 299, 309 (N.J. 1998). Although Mankodi attempts to frame this claim as a common law breach of contract and conversion, his complaint evidences that he is really alleging a violation of the CCA. *See* App. 31 (―When defendant's personnel breached the regulations of the New Jersey Gaming Control Commission, and cheated and stole plaintiff's hand with a present value of $1,865.00, it breached the gaming agreement between [sic] that it had with plaintiff.‖).

Moreover, insofar as Count 5 alleges conversion, it fails because only ―tangible personal property, or tangible evidence of title to intangible or real property is subject to conversion,‖ *see Cameco, Inc. v. Gedicke*, 690 A.2d 1051, 1058 (N.J. Super. Ct. App. Div. 1997), *modified on other grounds by Cameco, Inc. v. Gedicke*, 724 A.2d 783, 792

---

*Party of Allegheny Cnty. v. Allegheny Cnty. Dept. of Elections*, 174 F.3d 305, 316 n.11 (3d Cir. 1999).

(N.J. 1999), and the Casino did not take any of Mankodi's tangible property or tangible evidence of title.

Mankodi's trespass to chattels and conversion claims in Count 7 also fail. Mankodi states only vaguely that "the defendant removed chattels in plaintiff's possession and dispossessed plaintiff of the same." App. 32. He does not state what chattels were removed, how the Casino removed them, or what the Casino did to them. Therefore, Mankodi's "naked assertion" does not provide "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

Mankodi's intentional infliction of emotional distress (IIED) raised as Count 8, also fails. To plead a claim for IIED, a plaintiff must show, *inter alia*, that he suffered emotional distress that was severe. *See Leang*, 969 A.2d at 1115. Other than a conclusory statement that he "suffered emotional distress, outrage, and mental suffering," Mankodi has not alleged what type of emotional distress he suffered, what symptoms he had, or what treatment, if any, he sought. Thus, he has not alleged sufficiently severe emotional distress to support a claim for either IIED. *See Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 633 A.2d 985, 993 (N.J. Super. Ct. App. Div. 1993) ("[P]laintiff's claims of _severe humiliation, anxiety, and emotional distress' were not sufficient to establish a cause of action.").

11

Finally, Counts 11 and 12 (common law and statutory fraud) fail because Mankodi alleged no facts showing that the Casino intended to rescind the blackjack hand at the time it represented that it would play it. Although the Casino later did rescind the hand, we may not "infer fraudulent intent from mere nonperformance" of a contract, as doing so would "eviscerate the distinction between a breach of contract and fraud." *United States v. D'Amato*, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994). Therefore, we conclude that Mankodi failed to allege any "material [mis]representation of a presently existing or past fact," which is a necessary element of fraud. *See Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521, 524 (N.J. 1981); N.J. Stat. Ann. § 56:8-2 (requiring a "concealment, suppression or omission" for statutory fraud liability).[5]

## IV

For the foregoing reasons, we will affirm in part, reverse in part, and remand the case to the District Court for further proceedings consistent with this opinion.

---

[5] Judge Cowen would dismiss the common law and statutory claims, since it is his impression that they are likewise pre-empted by the CCA.